# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18CR00181 |
|---|---|---|
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| JAMES NAGY, ET AL., | ) | **OPINION AND ORDER** |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion (ECF DKT #40) of Defendant James Nagy to Suppress, requesting that the Court suppress evidence seized from Defendant's commercial properties because the search warrants issued in this matter lacked probable cause in violation of Defendant's Fourth Amendment rights. In addition, Defendant requests an oral hearing. For the following reasons, the Court **DENIES** Defendant's Motion in its entirety.

## I. BACKGROUND FACTS

On July 26, 2017, the Willoughby Police Department received a complaint that small piles of money were scattered in the grass near Shiny Car Auto Detailing ("Shiny Car"). When police arrived at the scene, they met with the neighboring business owner who called in the complaint. The neighbor stated that he observed a broken window and small piles of money in the vicinity. The neighbor recounted his conversation with the owner of Shiny Car, Defendant James Nagy. Defendant stated that nothing was missing from his business and that he did not believe anybody actually entered into the premises. Defendant allegedly stated that he was not going to report the incident to the authorities.

Later in the afternoon, Willoughby police met with Mr. Ken Savoca[1] at the police station. Mr. Savoca stated that he was an employee at Shiny Car. Mr. Savoca was aware that police were at the business that morning. After the police left, Mr. Savoca began to look around for possible missing items. Mr. Savoca told officers that a wooden box containing roughly $5,000.00 was empty. He alleged that he gave his ex-girlfriend $300 from the box and that he was "almost positive" it was her that broke into the business and stole the remaining money. According to Mr. Savoca, his ex-girlfriend was the only person who knew the location and contents of the box. Despite his inclination that his ex-girlfriend was involved, Mr. Savoca refused to provide her name to the authorities. He did not wish to pursue any criminal charges against her and he did not want the police to continue their investigation.

The next day, on July 27, 2017, the Westlake Police Department conducted a traffic stop of a vehicle at the Super 8 Motel. The search produced evidence of narcotics, paraphernalia and roughly $35,000.00 in U.S. currency. The two individuals in the vehicle told police officers they has a room at the Super 8 Motel. With consent, police conducted a search of the room. The room search produced more narcotics, drug paraphernalia and money. In total, the police seized $80,673.00 in U.S. currency.

On July 28, 2018, after receiving and signing a *Miranda* waiver, Westlake officers interviewed one of the suspects from the vehicle. The suspect admitted to stealing roughly $92,000.00 from Shiny Car, leaving approximately $30,000-$40,000 to avoid suspicion. According to the suspect, his co-conspirator from the vehicle was friends with Mr. Savoca,

---

[1]Mr. Savoca is also a defendant in this case, although he has not filed a similar Motion to Suppress.

whom she believed owned Shiny Car. Finally, the suspect believed Mr. Savoca had a marijuana grow operation at an unknown location. The Westlake Police Department then informed the United States Drug Enforcement Administration ("DEA") of these events.

On or about October 19, 2017, the Willoughby Police Department received an anonymous tip that Defendant and Mr. Savoca operated a large-scale marijuana operation located at 7071 Ledge Rd., Thompson, Ohio ("7071 Ledge"). Using publically available information, officers determined that Defendant purchased 7071 Ledge in 2016, which had over 4,600 of storage space; and that a permit was obtained to do electrical improvements at the location. The DEA then informed the Geauga County Sheriff's Office ("GCSO") of the above facts.

From October 23, 2017 until the end of the month, authorities surveilled the Property. During that time, officers:

- Observed multiple individuals, including Defendant and Mr. Savoca, enter and leave the Property;

- Observed individuals load and unload unknown material to and from the Property;

- Subpoenaed the Property's electrical bills from the provider;

- Conducted foot patrols of the area;

- Observed an overwhelming smell of marijuana late in the night; and

- Reviewed public records that showed aerial views of the Property.

On November 1, 2017, authorities obtained a warrant for a thermal image search based upon the facts, observations and experiences of the investigators involved. That same night, officers from the GCSO and the DEA conducted a thermal image scan of the Property. Upon

-3-

doing so, the authorities observed anomalies that were typical of marijuana cultivation operations. Authorities also observed a smell of marijuana consistent with their observations at a similar time in the past. Finally, authorities viewed a similar sized facility using thermal imaging in order to control for their observations. That scan produced no such anomaly. Based on the results from the thermal image scan, as well as the other evidence known to investigators, the authorities obtained a search warrant for 7071 Ledge on November 3, 2017.

Also, on November 3, 2017, an agent for the Lake County Narcotics Agency provided an affidavit for a search warrant of Shiny Car. In his affidavit, the Special Agent attested to the above facts and stated that, in his experience and training, evidence of a crime would be located at Shiny Car. Specifically, the Special Agent requested authority to search for drugs and equipment necessary to prepare drugs for trade, U.S. currency, contraband, vehicles, weapons and recording and monitoring devices used in the facilitation of drug transactions. A Lake County Court of Common Pleas Judge granted the Special Agent's warrant to search Shiny Car.

Defendant now moves to suppress the evidence obtained by the three search warrants. Defendant argues that the searches were unconstitutional as they all lacked probable cause. The Defendant requests an oral hearing on the matter.

The Government opposes, arguing that each judge had sufficient probable cause to issue each warrant and the searches were constitutional. In the event that they were not, the Government argues that the authorities conducted the searches in good faith and that the exception to the exclusionary rule is applicable.

## II. LAW AND ANALYSIS

**A.     Standard of Review**

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, ***given all the circumstances set forth in the affidavit*** before him [or her], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. (Emphasis added).

*See also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

A probable cause finding "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. However, reviewing courts must ensure that the issuing magistrate or judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S.

897, 914 (1984), quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, at 915, quoting *Gates*, *supra*, 462 U.S. at 239.

A reviewing court assesses probable cause by focusing only on the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitley v. Warden*, 401 U.S. 560, 564-65 (1971)); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)**.**

### B. Affidavit for Thermal Image Search of 7071 Ledge Road

The Chardon Municipal Court Judge had a substantial basis for concluding that probable cause existed in issuing the warrant for a thermal image search of 7071 Ledge. The Government must obtain a search warrant before use of thermal imaging equipment to detect heat-generating activity in a defendant's house. *Kyllo v. United States*, 533 U.S. 27, 34-35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *see also United States v. Elkins*, 300 F.3d 638, 646 (6th Cir. 2002).[2]

Here, the Government sought a search warrant before the use of thermal imaging equipment at 7071 Ledge. In his Affidavit for Thermal Image Search Warrant, Detective Humar

---

[2] The Parties do not address the distinction in Fourth Amendment protection between an individual's house and a commercial property, the subject of the thermal image warrant in this matter. The Government has "greater latitude to conduct warrantless inspections of commercial property because the expectations of privacy that the owner of commercial property enjoys in such property differ significantly from the sanctity accorded an individual's home." *Donovan v. Dewey*, 452 U.S. 594, 598-99 (1981); *Dow Chemical Co. v. U.S.*, 476 U.S. 227 (1986); *Elkins*, 300 F.3d at 646 ("[t]here is a reasonable expectation of privacy in business premises, yet it is less than the reasonable expectation of privacy enjoyed by the home"(citations omitted)). Whether or not *Kyllo* extends to commercial properties is unclear. *Elkins*, 300 F.3d at 646 ("There is little federal precedent on the thermal imaging of commercial property, and none since *Kyllo*").

swore to his experience and training in the investigation of narcotics. The Affidavit states that authorities received an anonymous tip regarding a marijuana cultivation operation at 7071 Ledge. The tip provided a specific address, identified a specific illegal activity occurring at that location, and implicated Defendant and Mr. Savoca. *See U.S. v. Hoang*, 487 Fed.Appx. 239, 242-43 (6th Cir. June 25, 2012) (finding that an anonymous tip that identified a location, the precise illegal activity and the suspect, which was further corroborated by police investigation, supported a finding of probable cause).

The police further corroborated this by surveilling the Property; observing the smell of marijuana at times consistent with practices often observed in large scale marijuana cultivation operations; and observing the same individuals over multiple days loading and unloading unknown materials. Investigators also subpoenaed and reviewed electrical records which reflected a higher use of electricity than commercial buildings of a similar size. *See id.* at 243, citing *United States v. Thomas*, 605 F.3d 300, 310 n. 9 (6th Cir. 2010) (holding that elevated electrical usage corroborated the informant's tip that the defendant was a marijuana grower).

Defendant critiques the Affidavit by arguing that Detective Humar failed to include his qualifications and training with using thermal imaging equipment. This, according to Defendant, is fatal to the Affidavit's sufficiency. "An affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added. *Thomas*, 605 F.3d at 309. Further, Defendant does not put forward any case precedent that requires what Defendant desires. The Court in *Kyllo* made no such requirement for a thermal scan of a residence. As such, the Court will not impose a requirement for an affiant to disclose training and experience with use of thermal imaging equipment on authorities.

After reviewing the totality of the circumstances described in the Affidavit and not line-by-line as Defendant seems to argue, *see United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004), the Court finds that the Municipal Judge had a substantial basis for concluding that probable cause existed in issuing the warrant for thermal imaging.

    C.    Affidavit for Search of 7071 Ledge Road

The Municipal Judge also had a substantial basis for concluding that probable cause existed in issuing the search warrant for 7071 Ledge. The Affidavit for search of 7071 Ledge included information from the thermal imaging Affidavit, plus the results from the thermal imaging search. The thermal imaging search displayed irregular heating patterns as compared to two similar structures. (ECF DKT #40-2, ¶ 24). Investigators also detected a strong odor of marijuana when conducting the thermal image search. *Id.* at ¶ 25. Finally, based on the investigators experience and training, the strength of the "thermal anomaly" supported the conclusion that a large marijuana cultivation operation was present at the Property. *Id.* at ¶ 26.

Again, Defendant takes issue that the swearing officer did not include the experience of the investigators with thermal imaging equipment. For the reasons explained above, this argument is unfounded. Moreover, Detective Humar stated that he conducted the thermal image search with DEA Task Force Officer Stout, who is a certified thermographer. *Id.* at ¶ 24.

Accordingly, the Court finds that the Municipal Judge had a substantial basis for concluding that probable cause existed in issuing the search warrant for 7071 Ledge**.**

    **D.**    **Affidavit for Search of Shiny Car**

Defendant challenges the Affidavit for the search of Shiny Car on the basis that the investigators did not demonstrate the necessary nexus to the investigation of 7071 Ledge. Any

information about Shiny Car in the Affidavit is stale, as it happened more than three months before authorities sought a search warrant for Shiny Car. Further, Defendant takes issue with the fact that a different magistrate issued the warrant to search Shiny Car. Finally, no evidence was offered to demonstrate that Shiny Car was used as a marijuana grow operation.[3]

      *i.*      *Staleness*

The only facts that support a search of Shiny Car stem from encounters with various individuals between July 26 and July 28, 2017. These allegations paint a picture involving multiple individuals, across multiple jurisdictions, involving multiple police departments, narcotics and a large quantity of U.S. currency.

On July 26, 2017, business neighbors of Shiny Car notified authorities of an alleged break-in at Shiny Car. (ECF DKT #40-3, ¶ 13). Small piles of U.S. currency were discovered in the surrounding area. *Id.* Defendant allegedly told a neighbor that nothing was missing from his business and that he did not want to report the incident to the police. *Id.* When authorities interviewed Mr. Savoca, an employee at Shiny Car, he alleged that approximately $5,000 was missing, that his ex-girlfriend was most likely responsible for the break in, but that he did not intend to press charges against her. *Id.* at ¶ 14.

The next day, authorities across town discover two individuals with a large amount of narcotics, paraphernalia and U.S. currency. *Id.* at ¶ 7. In total, authorities seized $80,673.00.

---

[3] Defendant also raises an issue that the averments that Shiny Car was a legitimate business were not included in the Affidavit to search Shiny Car. This averment was included in both the Affidavit for Thermal Imaging and the Affidavit for Search of 7071 Ledge. However, the Court relies solely on the "four-corners" of the Affidavit to determine whether the issuing magistrate had a substantial basis for concluding probable cause existed to issue the search warrant of Shiny Car. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998).

*Id.* at ¶ 10. After consenting to a voluntary interview, the suspect admitted to breaking into Shiny Car, stealing roughly $92,000.00, while leaving $30,000.00-$40,000.00 behind. *Id.* at ¶ 11. He also claimed Mr. Savoca had a marijuana grow operation at an unknown location. *Id.*

Shiny Car and Mr. Savoca became subjects of interests to the authorities for the operation of a marijuana cultivation conspiracy. *Id.* at ¶ 15. An intervening tip led authorities to 7071 Ledge, which turned out to be the actual site of the marijuana cultivation operation. *Id.* at ¶ 18. Ultimately, based on surveillance and corroboration of the tip, as well as the collective experience and training of the investigators, the government sought and obtained a search warrant of Shiny Car on November 3, 2017. *Id.* at ¶ 36.

Defendant argues this information is stale as any relevant facts concerning Shiny Car occurred more than three months prior to the ultimate search. "[I]n seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir.2010). In analyzing whether information is stale, the Sixth Circuit considers the following factors: (1) the character of the crime (chance encounter in the night or regenerating conspiracy?); (2) the criminal (nomadic or entrenched); (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?); and (4) the place to be searched (mere criminal forum of convenience or secure operational base). *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). The Sixth Circuit found that, in the case of drug trafficking, the crime is ongoing, "the defendant's location is established, the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base." *United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003).

Here, factors (1), (2) and (4) weigh in favor of finding that the information from Shiny Car was not stale. The authorities were investigating a large scale marijuana growth operation. The inherent nature of the crime is ongoing. Defendant and Mr. Savoca were entrenched in this operation, operating out of multiple locations. Investigators observed both Defendant and Mr. Savoca at 7071 Ledge and Shiny Car. Further, the place to be searched (Shiny Car) was a commercial property,[4] a more "secure operational base" rather than a convenient forum for criminal activity.

Factor (3) is more nuanced. In his Affidavit, Task Force Officer Lajack sought authority to search for the following information:

> [C]ontrolled substances, any derivatives, thereof, packaging materials, scales, and other devices used for the preparation, sale, and administration, of said drugs, and any United States Currency, recording and monitoring devices used in the facilitation of drug transactions, any weapons used or maintained for the protection of said unlawful enterprise together with any books, records, receipts, bank statements, utility bills, tax records evidencing the acquisition, concealment, transfer and sale of drugs and narcotics, other documentation concerning drug trafficking, contraband, cell phones, firearms, electronically stored information, all containers and/or vehicles used to store, conceal, and preserve the above described items located at [Shiny Car].

The information that authorities sought from Shiny Car was a mix of "perishable information" (i.e., narcotics, devices, U.S. currency etc.) and "enduring information" (i.e., books, tax records, firearms, vehicles etc.). Thus, factor (3) could weigh in favor of either the Government or Defendant, but it is not clear as to a particular side.

Based on the above, the Court finds that the information from Shiny Car in late July of

---

[4]Again, the expectation of privacy for a commercial property is owner is different than that for one's residence. *Supra*, note 2.

-11-

2017 was not stale. Accordingly, the Lake County Judge was justified in considering the information.

                ii.      *Nexus*

Next, Defendant challenges the sufficiency of the nexus between the alleged criminal activity and Shiny Car. A finding of probable cause requires a "sufficient nexus between the place searched and the evidence sought." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "The affidavit must suggest 'that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'" *U.S. v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)).

Here, the Affidavit to search Shiny Car demonstrated a sufficient nexus between the place searched and the evidence sought. First, the information from the end of July 2017 was not stale as determined above. This evidence demonstrated with a high probability that authorities would discover a large amount of U.S. currency at Shiny Car. Large sums of cash may demonstrate the presence of drug trafficking. *See U.S. v. Brooks*, 594 F.3d 488, 495 (6th Cir. 2010) ("Courts have readily acknowledged that large sums of cash are indicative of drug trade, *e.g.*, *United States v. Winder*, 557 F.3d 1129, 1138 (10thCir. 2009) (citing cases stating that large sums of cash are commonly known to be tools of the drug trade)"). Thus, authorities demonstrated a sufficient nexus between Shiny Car and the evidence sought - i.e., narcotics and their derivatives, U.S. currency, books, records, tax documents and information that evidenced the concealment of drug trafficking.

Additionally, investigators observed Mr. Savoca's vehicle both at Shiny Car and 7071

Ledge. The vehicle and its occupant, Mr. Savoca, were seen entering 7071 Ledge, a suspected marijuana cultivation facility. In the investigating officer's training and experience, drugs are often times transported through the use of vehicles. Again, the Affidavit demonstrates a sufficient nexus between Shiny Car and the evidence sought - any vehicles at Shiny Car.

After reviewing the totality of the circumstances, the Court determines that the Lake County Judge had a substantial basis for concluding that probable cause existed in issuing the search warrant for Shiny Car.

### III. CONCLUSION

The Court holds that the Chardon Municipal Judge and the Lake County Judge each had a substantial basis for concluding that probable cause existed. Each Affidavit relays evidence that creates a fair probability that authorities would find evidence of a marijuana cultivation operation at 7071 Ledge and Shiny Car. Moreover, due to the inherent nature of the crime under investigation, the information from July of 2017 was not stale. Finally, the Court also finds that the officers had a good-faith basis to believe that each Search Warrant was valid. *United States v. Leon*, 468 U.S. 897 (1984).

Therefore, the Court denies the Motion (ECF DKT #40) of Defendant James Nagy to Suppress in its entirety, without a hearing.

**IT IS SO ORDERED.**

                                        s/ Christopher A. Boyko
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

Dated: November 1, 2018